UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AARON STRIBLING,

    Plaintiff,

v.

LUCERO,

    Defendant.

No. 2:16-cv-1438-GEB-EFB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding without counsel in this action brought pursuant to 42 U.S.C. § 1983. Defendant seeks summary judgment in his favor, arguing that the undisputed facts show that he did not subject plaintiff to excessive force, that plaintiff suffered no injury, and that he should be afforded qualified immunity. ECF No. 21. For the following reasons, the motion must be denied.

**I.    The Facts Presented by the Parties**

This case arises from an altercation between plaintiff, a state prisoner, and defendant Lucero, a correctional officer, on a bus transporting inmates from one prison to another. The parties agree on many facts, but dispute each other with regard to their personal conduct before and during the altercation. Such disputes will be noted below.

On June 23, 2014, plaintiff was being transported from California State Prison, Sacramento to Deuel Vocational Institute. ECF No. 21-1, Def.'s Facts ISO Mot. for Summ. J.

1

(hereinafter "DUF") No. 3; ECF No. 1, Pl.'s Compl., at 4.[1] Defendant was working as a transportation officer for that transport, along with Sergeant Gunderson (who plaintiff refers to as "Granderson") and another officer. DUF No. 5; ECF No. 1 at 4-5. The transport made a scheduled stop at the California Medical Facility ("CMF") in the afternoon. DUF No. 7; ECF No. 1 at 4. According to defendant, as the bus arrived at CMF, plaintiff rudely yelled to the officers that he wanted some water. DUF No. 7. Plaintiff claims that he politely requested water. ECF No. 1 at 4.

When the bus stopped, Gunderson and the other officer left to unload some inmates and property. DUF No. 8. Defendant began to distribute water in Dixie cups to the remaining inmates. *Id.* Nos. 8-10; ECF No. 1 at 4. Plaintiff was sitting at the front of the bus and was the first to receive water. DUF No. 10. According to defendant, plaintiff then said, "I want another one." *Id.* According to plaintiff, he was extremely thirsty and thus "asked politely if I could be provided with a little more because of the miniscule amount [defendant] gave me." ECF No. 1 at 4. Defendant refused and told plaintiff to sit back down. DUF No. 10; ECF No. 1 at 4.

Plaintiff claims that, when Lucero was done handing out water and was locking the gate that separates the inmate section of the bus from the place where the officers sit, plaintiff told him he was "fake." ECF No. 1 at 4. Plaintiff alleges that Lucero then reopened the gate, "stormed" toward plaintiff and began aggressively shaking and pushing his upper body while his hands, waist, and ankles were shackled. *Id.* at 4-5. According to plaintiff, Lucero then left the bus to speak to Gunderson, who took plaintiff off the bus, gave him water "to his heart's content," and had the nurse at CMF examine him. *Id.* at 5.

According to defendant, when plaintiff returned to his seat on the bus after receiving water, he glared at defendant. DUF No. 11. When defendant finished giving water to the inmates, plaintiff again asked for more and, again, defendant refused. *Id.* Defendant claims that plaintiff then called him a "motherfucker" and said, "bitch, it ain't your water." *Id.* Plaintiff was "loud and disruptive, and his derogatory comments were continuous despite Officer Lucero's

---

[1] The only evidence plaintiff has submitted in support of his claim is his verified complaint.

2

admonitions to stop swearing." *Id.* Defendant claims that he then "stepped up" to plaintiff, informed him he had already received his water, and "used his right hand to hold the collar of Inmate Stribling's state-issued white cloth jumpsuit" and "placed my left hand behind his head for two to three seconds." *Id.* No. 12. Defendant declares that he did not strike, hit, or shake plaintiff in any way and that he did not intend to harm plaintiff but rather to prevent him from becoming more disruptive and to restore order. DUF No. 27. Defendant was the only officer on the bus and he did not want the situation to escalate. *Id.*

Sergeant Gunderson declares that plaintiff admitted to him that he had called defendant a "motherfucker" and a "bitch" and stated that it was "bullshit" that he did not get more water. DUF No. 18. According to Gunderson, plaintiff was not upset or animated, and he refused medical care, stating that nothing had happened. DUF Nos. 19-20.

The parties do not dispute that plaintiff was left at a neighboring institution (California State Prison – Solano) to take a different transport to his ultimate destination later that night. DUF No. 21; ECF No. 1 at 5. According to Gunderson, when plaintiff found out that he would not complete the transport, he became loud and unruly and stated, "I'm going to tell them what really happened." DUF No. 22. Gunderson understood this statement to be a threat that plaintiff would lie because he was not allowed to get back on the bus at Solano. *Id.*

The parties do not dispute that plaintiff suffered no physical injuries whatsoever from the altercation. DUF Nos. 20, 24, 25, 31, 32, 33; ECF No. 21-2 at 45 (plaintiff admitting no physical injuries in response to discovery); ECF No. 21-2 at 15 (plaintiff testifying in deposition that he suffered no physical injuries).

**II. The Motion for Summary Judgment**

Defendant argues that the undisputed facts show that he did not subject plaintiff to excessive force, that plaintiff suffered no injury, and that he should be afforded qualified immunity. For the reasons that follow, the undersigned finds that summary judgment should be denied.

/////

/////

**A. Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters

which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to

5

demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 40-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B. Analysis**

**1. <u>Excessive Force</u>**

Prisoners have a right to be free from excessive force at the hands of correctional staff under the U.S. Constitution's Eighth Amendment. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). To succeed on a claim of excessive force, a prisoner must show that a correctional officer used force against him maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). To determine whether the evidence establishes such a scenario, the factfinder may consider: (1) the

need for force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the officer; (4) the extent of injury suffered by the plaintiff; and (5) any efforts made to temper the severity of the forceful response. *Id.* at 7.

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated. [citation] This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9. Thus, the factfinder must focus not on the extent of injury but rather the extent of force used. *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002). Nevertheless, not every "malevolent touch" by an officer violates the Constitution. *Hudson*, 503 U.S. at 9. De minimis uses of force do not violate the Constitution unless they are "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9.

Thus, the court will evaluate the evidence presented by the parties in light of the factors announced in *Hudson*, starting with the need for force. Plaintiff's evidence consists solely of his own version of events, as recounted in his verified complaint (as well as the discovery responses and deposition transcript provided by defendant). He has not submitted any corroborating evidence, despite the presence of other inmates aboard the bus who presumably witnessed the altercation. According to plaintiff, he was very polite in asking for water and his only questionable conduct was to call defendant "fake." Defendant, on the other hand, declares that plaintiff called him a "motherfucker" among other derogatory and disruptive comments. Gunderson declares that plaintiff admitted to calling defendant a "motherfucker" and a "bitch." At this stage of the proceedings, however, the court must credit plaintiff's version of events. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015) (stating that a declaration and deposition testimony, while "uncorroborated and self-serving," were sufficient to create a genuine dispute of material fact). While plaintiff's account is disputed, if he presents that testimony at trial, it will be for the fact finder to assess his credibility.

Defendant declares that he did not grab plaintiff in order to harm him, but to restore discipline and prevent the situation from escalating, particularly because he was the sole correctional officer on a bus of inmates. Defendant does not dispute, however, that plaintiff was shackled at the time of the altercation. And defendant has submitted no evidence indicating that

7

plaintiff was physically aggressive toward him. Taking the evidence in the light most favorable to plaintiff, the first *Hudson* factor – the need for force – weighs in plaintiff's favor.

The parties also dispute the amount of force used. Plaintiff claims that defendant aggressively shook and pushed him; defendant claims that he held plaintiff by the collar with his other hand behind plaintiff's head for two-to-three seconds. Again, the court cannot resolve this credibility issue on summary judgment and must instead take the evidence in plaintiff's favor.[2] The parties do not dispute that defendant caused no physical injury to plaintiff and that the interaction was short. Taking the evidence in the light most favorable to plaintiff, the second *Hudson* factor – the amount of force used – weighs slightly in plaintiff's favor.

Moving on to the third *Hudson* factor (the threat reasonably perceived by defendant), the evidence taken in the light most favorable to plaintiff is that a shackled and otherwise polite inmate called defendant "fake" while defendant was the sole officer supervising a bus of inmates. There is no evidence that plaintiff made threats of physical violence or otherwise indicated he might become physically violent or incite other inmates to become violent. Due to the deference required toward plaintiff's evidence at the summary judgment stage, the third factor also weighs somewhat in favor of plaintiff.

The fourth *Hudson* factor – the extent of injury – weighs in favor of defendant. Plaintiff does not dispute that he suffered no physical injury. He claims that he was "scarred mentally" and lost sleep and relaxation over the incident, but has provided no evidence indicating that he suffered a significant amount of distress as a result of defendant's conduct.

Lastly, the court must consider defendant's efforts to temper the severity of the force. Again taking everything in the light most favorable to plaintiff, the evidence is that defendant aggressively shook and pushed plaintiff for a very short time without causing any physical injury.

/////

/////

---

[2] For the same reason, the court cannot grant defendant's request for summary judgment on the ground that the force he used against plaintiff was "de minimis." The parties dispute the amount of force and the court cannot, at this stage, credit defendant's testimony over plaintiff's to find that not enough force was used to establish a violation of the Eighth Amendment.

1 Defendant then left the bus. The short duration of the altercation, the absence of any physical
2 injury, and defendant's decision to quickly remove himself from the situation tilt this factor in
3 favor of defendant.
4       In sum, due to the deference the court must afford the evidence of the non-moving party in
5 determining the propriety of summary judgment, the *Hudson* factors weigh enough in plaintiff's
6 favor indicating that a factfinder could conclude that defendant used force maliciously and
7 sadistically to cause harm or pain rather than in a good-faith effort to maintain or restore
8 discipline. Accordingly, defendant's request for summary judgment on the ground that the
9 undisputed facts show that he did not subject plaintiff to excessive force should be denied.

### a. **Injury**

11       Defendant next argues that 42 U.S.C. § 1997e(e) bars plaintiff's claim because plaintiff
12 suffered no physical injury. That statute provides that "no Federal civil action may be brought by
13 a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury
14 suffered while in custody without a prior showing of physical injury." Contrary to defendant's
15 argument, however, § 1997e(e) does not bar plaintiff's entire claim, but simply his claim for
16 damages attributable to mental or emotional injury. *Oliver v. Keller*, 289 F.3d 623, 629-30 (9th
17 Cir. 2002). The absence of physical injury in this case, combined with § 1997e's prohibition on
18 damages for mental injury, will limit plaintiff's compensatory damages significantly. *Cockcroft
19 v. Kirkland*, 548 F. Supp. 2d 767, 777 (N.D. Cal. 2008) (absence of physical injury "may make
20 [plaintiff's] claim of very little financial value but does not make the claim non-existent."). But
21 plaintiff may seek compensatory damages that are not tied to his claim of mental injury.
22 *Cockcroft*, 548 F. Supp. 2d at 776; *see also Aref v. Lynch*, 833 F.3d 242, 262-67 (D.C. Cir. 2016)
23 ("intangible injuries" that are not mental and emotional (such as loss of program opportunities or
24 privileges) may be compensated without running afoul of § 1997e(e)); *Calhoun v. Detella*, 319
25 F.3d 936, 939-42 (7th Cir. 2003) (same). Additionally, plaintiff requests punitive damages, and
26 he may be entitled to nominal damages if he is able to establish that defendant subjected him to
27 an unlawful degree of force despite the lack of resulting physical injury or other compensable
28 injury. *Oliver*, 289 F.3d at 629-30. Thus, while it may be difficult for plaintiff to persuade a fact

finder at trial that, in light of the absence of physical injury, the force applied was nonetheless sufficient to warrant punitive damages or other damages not tied to mental or emotional injury, assessing plaintiff's credibility as what force was applied and any harmful effect of the physical altercation is the role of the fact finder.

### b. Qualified Immunity

Lastly, defendant argues that he should be granted qualified immunity from plaintiff's claim. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mueller v. Auker*, 700 F.3d 1180, 1185 (9th Cir. 2012). To determine whether an official is entitled to qualified immunity, the court must consider (1) whether, taken in the light most favorable to the plaintiff, the facts show that the officer's conduct violated a constitutional right, and (2) whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court can consider these two "prongs" of the qualified immunity analysis in the order of its choosing. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Defendant argues that there is no law that clearly established that his conduct – which he characterizes as a "holding" an inmate "for 2-3 seconds" – was unlawful. However, contrary to defendant's argument, the Supreme Court does not require "established cases on point." *Mullenix v. Luna*, __ U.S. __, 196 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2001): "We do not require a case directly on point[.]").

That an inmate is entitled to be free from excessive force at the hands of correctional officers is beyond question. *Hudson*, 503 U.S. at 5-6. But the court must more specifically inquire whether a reasonable officer would have understood that his conduct was unlawful under the circumstances. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060-62 (9th Cir. 2003). At this stage in the proceeding, the court must view the evidence presented in the light most

favorable to plaintiff in making this inquiry. *Id.* Thus, the court must ask not whether it was objectively reasonable for defendant to hold plaintiff for 2-3 seconds but rather whether it was objectively reasonable for defendant to aggressively shake and push plaintiff while he was shackled because plaintiff called him "fake." The undersigned agrees with the courts who have faced similar factual scenarios and finds that such a use of force against a plaintiff who posed no apparent threat is objectively unreasonable. *Jimenez v. City of Costa Mesa*, 174 F. App'x 399, 404 (9th Cir. 2006) (it was objectively unreasonable for an officer to use force against a non-arrestee in response to a verbal inquiry from eight feet away); *Vance v. Wade*, 546 F.3d 774, 785-86 (6th Cir. 2008) (finding it objectively unreasonable for an officer to believe force was necessary where the plaintiff had been secured and thus posed no threat).

Defendant also argues that he should be granted qualified immunity because the undisputed evidence shows he did not use excessive force. The evidence on this point is disputed as discussed above, however, and thus qualified immunity may not be granted at this stage in the proceeding.

**III.     Recommendation**

For the reasons above, it is hereby RECOMMENDED that defendant's June 15, 2017 motion for summary judgment (ECF No. 21) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 7, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE